Robert J. Cassity
Nevada Bar No. 9779
Erica C. Medley
Nevada Bar No. 13959
**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: 702.669.4600
Fax: 702.669.4650
bcassity@hollandhart.com
ecmedley@hollandhart.com

David A. Perez
(admitted *Pro Hac Vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.6767
Fax: 206.359.7767
dperez@perkinscoie.com

Matthew J. Mertens
(admitted *Pro Hac Vice*)
**PERKINS COIE LLP**
1120 N.W. Couch Street 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2199
Fax 503.346.2199
mmertens@perkinscoie.com

*Attorneys for Defendants*
*Jeff Moss and DEF CON Communications, Inc.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTOPHER J. HADNAGY, an individual; and SOCIAL-ENGINEER, LLC, a Pennsylvania limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>JEFF MOSS, an individual; DEF CON COMMUNICATIONS, INC., a Washington corporation; and DOES 1-10; and ROE ENTITIES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:23-cv-01345-CDS-BNW<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER** |

i

# **TABLE OF CONTENTS**

I.   Introduction ...................................................................................................................1

II.  argument .......................................................................................................................2

   A.  Mr. Hadnagy glosses over the first prong of the transfer analysis. ..................2

   B.  Mr. Hadnagy also misapplies the factors on the second prong. ......................2

      1.  Mr. Hadnagy's choice of forum. ..........................................................2
      2.  The convenience of the parties. ...........................................................3
      3.  The convenience of the witnesses and location of evidence. ..............5
      4.  The availability of compulsory process. .............................................6
      5.  The parties' contacts with the forum. ..................................................7
      6.  The parties' contacts relating to the causes of action. ........................9
      7.  The court's familiarity with the law. .................................................10
      8.  The costs of litigation. .......................................................................11

III. CONCLUSION ............................................................................................................12

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Heavy Moving & Rigging, Inc. v. Sheedy Drayage Co.*,
No. 2:08-CV-1466-KJD-RJJ, 2009 WL 10693611 (D. Nev. May 4, 2009)..........3, 4

*Ascend GEO, LLC v. OYO Geospace Corp.*,
No. 2:09-cv-01172-KJD-PAL, 2009 WL 10692475 (D. Nev. Aug. 28, 2009) ......2, 9

*Cambridge Filter Corp. v. Int'l Filter Co.*,
548 F. Supp. 1308 (D. Nev. 1982).......................................................................5

*Cybersell, Inc. v. Cybersell, Inc.*,
130 F.3d 414 (9th Cir. 1997)................................................................................9

*IDACORP, Inc. v. Am. Fiber Sys., Inc.*,
No. 1:11-cv-0065444EL, 2012 WL 4139925 (D. Idaho Sept. 19, 2012) ................10

*Kroeger v. Vertex Aerospace LLC*,
2020 WL 3546086 (C.D. Cal. June 30, 2020).......................................................2

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
583 F.3d 656 (9th Cir. 2009).........................................................................3, 11

*Malcolm v. Acrylic Tank Mfg., Inc.*,
No. 2:17-cv-1108-JCM-PAL, 2019 WL 1923633 (D. Nev. Apr. 30, 2019) ..............2

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006)..............................................................................9

*Ramirez v. Country Mut. Ins. Co.*,
No. 2:16-CV-0281-TOR, 2017 WL 11676856 (E.D. Wash Nov. 27, 2017).............6

*Strack v. Morris*,
No. 3:15-cv-00123-LRH, 2015 WL 4647880 (D. Nev. Aug. 5, 2015) ....................11

*STX, Inc. v. Trik Stik, Inc.*
708 F. Supp. 1551 (N.D. Cal. 1988).....................................................................3

*Wealthy, Inc. v. Cornelia*,
No. 2:21-cv-1173-JCM-EJY, 2023 WL 4803776 (D. Nev. July 27, 2023)...............9

**Other Authorities**

Fed. R. Civ. P. 1................................................................................................1

Fed. R. Civ. P. 11(b) ............................................................................................................... 5

Fed. R. Civ. P. 45 ................................................................................................................... 6

15 Wright & Miller, Federal Practice and Procedure § 3848 ............... 2

## I. INTRODUCTION

The Opposition of Plaintiffs Christopher Hadnagy and Social-Engineer, LLC ("Mr. Hadnagy") throws plenty of mud at the wall, but none of it sticks. Def Con's Motion to Transfer ("Motion") should be granted for several reasons.

***First***, unlike the Court here, the Western District of Washington has personal jurisdiction, subject matter jurisdiction, and proper venue over Defendants. *See* ECF No. 13, at pp. 5–8.

***Second***, the balance of the relevant factors weighs strongly in favor of transfer. None of the parties are located in Nevada. No identified witnesses are located in Nevada. No identified evidence is located in Nevada. Mr. Hadnagy puts great weight on the slender reed of Def Con's four-day conference each year in Nevada, but this is a *defamation* case—one based on statements published online months after the event in Las Vegas and accessible anywhere in the world by anyone with an Internet connection. These statements weren't made in Nevada, didn't involve a Nevada resident, didn't target Nevada residents, and didn't involve assertions of Nevada-based conduct.

***Third***, the case law is clear that Mr. Hadnagy's choice of forum gets at-most-minimal deference because Def Con removed this action from Nevada state court. And contrary to Mr. Hadnagy's assertions, a transfer would not merely "shift" any inconvenience from Def Con to Mr. Hadnagy. Mr. Hadnagy is an out-of-state litigant in *both* Nevada *and* Washington, whereas litigation in Washington would be indisputably more convenient and less expensive for Def Con.

Taken together, this lawsuit should be transferred to where Def Con, Mr. Moss, and the majority of Def Con's employees reside; where personal jurisdiction is undisputed; where all of Def Con's documents are located; and where transfer would favor the "just, speedy, and *inexpensive* determination" of this action—the Western District of Washington. *See* Fed. R. Civ. P. 1 (emphasis added).

1

## II. ARGUMENT

### A. Mr. Hadnagy glosses over the first prong of the transfer analysis.

"The transfer analysis is twofold." *Malcolm v. Acrylic Tank Mfg., Inc.*, No. 2:17-cv-1108-JCM-PAL, 2019 WL 1923633, at *3 (D. Nev. Apr. 30, 2019). Before weighing the factors, the Court must first determine whether the action could have been brought in the Western District of Washington. Namely, that it has "subject matter jurisdiction, personal jurisdiction, and proper venue." *Id.* Here, all three criteria are satisfied in the Western District of Washington. *See* Mot. at 10–11.

Notably, Mr. Hadnagy's Opposition does not address these three criteria, arguing instead that venue is proper in the District of Nevada. *See* Opp. at 13–14. By not contesting that all three criteria are met in the Western District of Washington, Mr. Hadnagy effectively concedes that this prong is satisfied. *See Kroeger v. Vertex Aerospace LLC*, 2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020) (holding that plaintiff conceded argument by failing to address it in his opposition brief) (collecting cases).

### B. Mr. Hadnagy also misapplies the factors on the second prong.

#### 1. Mr. Hadnagy's choice of forum.

Mr. Hadnagy's suggestion that his choice of forum "should rarely be disturbed" is simply wrong as a matter of law. ECF 17 at 15-16. Courts have held that little deference is given to an out-of-state plaintiff's choice of forum under two circumstances: (1) the case has been removed from state court; or (2) the district court is not the plaintiff's home forum. *See, e.g.*, 15 Wright & Miller, Federal Practice and Procedure § 3848 (stating that a case removed to federal court receives little deference and collecting cases); *see also Ascend GEO, LLC v. OYO Geospace Corp.*, No. 2:09-cv-01172-KJD-PAL, 2009 WL 10692475, at *3 (D. Nev. Aug. 28, 2009) ("[G]iven that Plaintiff is a resident of Colorado rather than Nevada, Plaintiff's

2

choice of forum will be given less deference."). Both are applicable here. Mr. Hadnagy filed this case in Nevada *state* court, and neither Mr. Hadnagy nor his company are Nevada residents. Little deference should be given to their "choice" of the District of Nevada as a forum.

Mr. Hadnagy ignores Def Con's case law on this point. *See* ECF 16 at 11:14–27 (collecting cases); ECF 17 at 15–18. But no amount of cherry-picked quotes can circumvent the clear case law. For example, Mr. Hadnagy relies on *STX, Inc. v. Trik Stik, Inc.* 708 F. Supp. 1551 (N.D. Cal. 1988) for the proposition that "plaintiff's choice of forum should not be easily overturned." 708 F. Supp. at 1556. But the plaintiff in that case was a California corporation that had filed suit in the Northern District of California, and thus was given greater deference since filing in its "home forum." *Id.* at 1553. That case is not applicable.

Mr. Hadnagy's reliance on *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656 (9th Cir. 2009) is equally unavailing. For starters, Mr. Hadnagy quotes from the court's *dissenting* opinion. *See* Opp. at 15:16. Worse, he ignores the language in the majority opinion emphasizing that the plaintiff's choice of his *home forum* gets deference. *Loya*, 583 F.3d at 665.[1] Mr. Hadnagy should not be afforded this deference because District of Nevada is not his "home forum." Little deference should be given under this factor, weighing in favor of transfer.

### 2. The convenience of the parties.

Transfer to the Western District of Washington would not "merely shift the inconvenience from one party to another," Opp. at 19, because ***all*** parties are out-of-state litigants in the District of Nevada and thus subject to the same inconveniences of litigating outside their home forum. While Def Con's inconvenience would be reduced by a transfer to the Western District of Washington, Mr. Hadnagy's

---

[1] Moreover, *Starwood Hotels* is a *forum non conveniens* case involving the propriety of venue in a transnational lawsuit, not a motion to transfer venue under § 1404(a). It is even less applicable for this reason.

3

inconvenience would simply remain the same. *See Am. Heavy Moving & Rigging, Inc. v. Sheedy Drayage Co.*, No. 2:08-CV-1466-KJD-RJJ, 2009 WL 10693611, at *2 (D. Nev. May 4, 2009) (granting motion to transfer venue, noting "considering that neither party has a substantial presence in the District of Nevada, the convenience again falls in favor of transfer to a district where one of the parties resides.")

Mr. Hadnagy claims—without a scintilla of evidence in support—that he is "less physically and financially equipped" than Def Con, *see* Opp. at 18:18, such that a transfer to the Western District of Washington would cause him "additional financial hardship." *Id.* at 19:25–26. But he does not cite **any** case law taking into consideration the parties' respective financial resources when determining the parties' "convenience." *See id.* at 18. Even if the parties' resources were to be considered, Mr. Hadnagy does not provide even a shred of evidence to substantiate his bald claims regarding his resources.[2] Mr. Hadnagy publicly lauds himself and his business as a nationwide success with "high-profile clientele," s*ee* Compl. ¶ 43, but cries poverty when it suits his purposes. Mr. Hadnagy certainly has sufficient funds to affirmatively pursue these specious claims in two different lawsuits.

At bottom, Mr. Hadnagy will not suffer any additional burden if the action was transferred to the Western District of Washington, given the burden as an out-of-state litigant will remain the same. Thus, this factor weighs in favor of transfer to "a district where one of the parties resides." *See Am. Heavy Moving & Rigging, Inc.*, 2009 WL 10693611, at *2.

---

[2] Mr. Hadnagy does not provide any information regarding his finances and simply declares that Defendants have "seemingly limitless resources." Opp. at 18:23, He is wrong. Def Con's only source of funds is the admission fees charged to Event attendees. *See* Exhibit A, Suppl. Decl. Jeff Moss, ¶ 14. The Event comes with significant operating expenses given the scale of the conference and the event venue at a hotel in Las Vegas. *Id.* ¶ 15. After deducting all operating expenses for Def Con, Def Con makes very little in terms of profits. *Id.* ¶ 16.

4

### 3. The convenience of the witnesses and location of evidence.

The Court's "primary concern is the convenience of the witnesses." *Cambridge Filter Corp. v. Int'l Filter Co.*, 548 F. Supp. 1308, 1311 (D. Nev. 1982). While Mr. Hadnagy complains that Def Con does not identify any witnesses "by name and describe their testimony," Mr. Hadnagy fails to properly identify his own witnesses *at all*.[3] Opp. at 22:9–22. Vaguely, Mr. Hadnagy asserts that he "intend[s] to call witnesses located in Nevada and California," but fails to disclose the names of any of these supposed Nevada (or California) witnesses. *Id.* at 23:6. In fact, Mr. Hadnagy fails to identify a single witness located in Nevada, which is unsurprising given that the vast majority of attendees reside **outside** of Nevada and fly into Las Vegas for the four-day Event. *See Cambridge Filter Corp.*, 548 F. Supp. at 1311 (transferring case when "[t]here are no witnesses who live in Nevada").

Turning a blind eye to the short, temporary nature of the Event, Mr. Hadnagy claims that "it is highly likely that witnesses and documents will be located in Nevada, or will return to Nevada for the Event." Opp. at 23:18-19. His speculations are insufficient for several reasons.

*First*, Mr. Hadnagy admits that **none** of the witnesses Defendants previously disclosed in the now-dismissed Pennsylvania action are located in Nevada. *See* Opp. at 8:3–7 (admitting identified witnesses are located in Utah, Florida, and California); ECF 17-15, at ¶ 9. Mr. Hadnagy further admits that his employees are also **not** located in Nevada. *See* Opp. at 8:7–9. Meanwhile, Mr. Moss and the majority of Def Con's employees **are** located in Washington. Ex. A, Suppl. Decl. Jeff Moss ¶ 5.

Second, Mr. Hadnagy hazards guesses about the location and relevance of documents "from any of the hotels that hosted the Event" and "other local entities,"

---

[3] Mr. Hadnagy's failure in this regard is notable. A defendant must necessarily be reactive in investigating the claims against them; a plaintiff presumably knows who can substantiate their claims, or the lawsuit has not been filed in good faith. *See* Fed. R. Civ. P. 11(b).

5

such as local law enforcement. Opp. at 23:22–25. This is pure speculation. What is known for certain is that any documentation relating to the Event and Mr. Hadnagy's participation, including Def Con's communications with third parties regarding Mr. Hadnagy's conduct, are located in Washington. ECF 15-1 at ¶ 4.

Third, Mr. Hadnagy focuses solely on evidence relating to the defamation claim, disregarding the other six claims alleged against Defendants. Mr. Hadnagy has brought myriad claims, and evidence relating to any business interference will be located at Social-Engineer's principal place of business in Florida or other entities' principal places of business. Nor does the defamation claim create the necessary hook to Nevada. Def Con posted the Ban Announcement to its website months *after* the Event had concluded, and the Ban Announcement and Transparency Report Update have only the most tenuous of connections to Nevada.

Mr. Hadnagy's hypothetical and conjectural locations of evidence are not sufficient to weigh against transfer to the Western District of Washington, where it is certain that evidence and testimony are located.

**4.     The availability of compulsory process.**

As explained above, Mr. Hadnagy fails to identify a single witness by name that is located in Nevada, and further, he misapprehends the 100-mile limitation in Rule 45(c)(1) and (c)(2). *Any* federal court—whether this Court or the Western District of Washington—may compel a third-party witness to sit for deposition, or produce documents, irrespective of whether the witness is within 100 miles of the district issuing the subpoena. . *See, e.g., Ramirez v. Country Mut. Ins. Co.*, No. 2:16-CV-0281-TOR, 2017 WL 11676856, at *2 (E.D. Wash Nov. 27, 2017). The subpoena merely cannot order that witness to attend a deposition or produce documents outside of 100 miles from where the witness *resides*, is *employed*, or regularly *transacts business*. *See* Fed. R. Civ. P. 45(c)(1)(A) and 45(c)(2)(A) (so stating). Mr. Hadnagy thus incorrectly states that Rule 45 precludes a Washington federal court

6

from subpoenaing Nevada residents for documents and testimony. ECF 16 at 23. The availability of compulsory process does not weigh against transfer.

### 5. The parties' contacts with the forum.

Mr. Hadnagy places excessive weight on the annual Def Con conference (the "Event") in Las Vegas, Nevada. **This is a red herring.** Even if the Event is "one of the biggest annual conventions in Las Vegas" as Mr. Hadnagy claims without evidence, *see* Opp. at 8:13,[4] that doesn't change the fact that the conference only amounts to ***four days*** out of 365 days of the year. ECF 15-1 at ¶ 4. Def Con has also hosted conferences in Beijing and New York City. *Id.* Besides conferences, Def Con maintains a ***globally accessible*** website that provides (1) information security-related training and resources, (2) a platform for forums run by members of the information security community, and (3) information regarding Def Con's conferences. Ex. A, Suppl. Decl. Jeff Moss, ¶ 13. Other than the four-day Event, Def Con and its website have minimal (if any) contact with Nevada. Def Con is *in Washington* year-round, and that's where jurisdiction lies.

Def Con is not taking a "curious position" regarding Def Con's online presence. Opp. at 20:15–26. The website is accessible to everyone everywhere and thus it does not "target Nevada residents to attend the Event." *Id.* In fact, Def Con does not maintain any sort of contact list for past or prospective attendees. ECF 15-1 at ¶ 7. This means Def Con does not use any form of targeted communication—email, mailing list, website traffic, or otherwise—to target anyone, let alone Nevada residents, to attend the Event. *Id.* ¶¶ 6-9. As for the "thousands of interactive online forums" on Def Con's website and other platforms, those are started and run by third parties who visit the Website, not Def Con. Ex. A, Suppl. Decl. Jeff Moss, ¶¶ 17-18.

---

[4] The Event in August 2023 had roughly 30,000 attendees. Suppl. Decl. Jeff Moss, ¶ 7. In comparison, in 2023, it is estimated that the annual Consumer Electronics convention held in Las Vegas had over 180,000 attendees and the annual Specialty Equipment conference held in Las Vegas had over 132,000 attendees.

7

Anyone with an internet connection can post on the forums, and access is not limited to people in Nevada or people attending the Event. *Id.* ¶ 19. Moreover, actions purportedly taken by third-party "hackers" who can "gain unauthorized access to data" and "utilize much more advanced platforms" cannot be imputed to Def Con for purposes of "contact" with Nevada. *See* Opp. at 20:19–24. Mr. Hadnagy also does not explain how such actions by these "hackers" target Nevada residents. *See id.*

Mr. Moss is named in this suit in his individual capacity, and his personal "contacts" with the forum are very limited. Other than a few short visits for conferences, Mr. Moss does not have any other contact with Nevada in his individual capacity. Ex. A, Suppl. Decl. Jeff Moss, ¶ 4. Mr. Hadnagy reads into Mr. Moss's omission of the term "lease" from his first declaration as some sort of evasive maneuver. Opp. at 19:14–15. To be clear, Mr. Moss does not hold any property rights—owning, leasing, or otherwise—in Nevada. *Id.* ¶ 3. Mr. Hadnagy also insists without any evidentiary support that "Mr. Moss is in Nevada frequently for various conventions and also for Event planning," but Mr. Moss makes only one weekend visit prior to the Event, in his capacity as a representative for Def Con, for Event logistics. *Id.* ¶ 4.

Turning to Mr. Hadnagy's own contacts with Nevada, other than a *non sequitur* reference to several tons of equipment held in storage in Nevada, Mr. Hadnagy does not provide *any* evidence of his own contacts with Nevada. He instead relies on the Complaint's *allegations* that he "regularly provided cybersecurity services to business entities in Nevada," although these entities are not identified by name, and "entered into annual business agreements that reached six-figures of compensation" with Black Hat USA, a *California*-based company that hosts an annual conference in Las Vegas. Opp. at 4:11–16.

In total, the parties' contacts with Nevada are de minimis and weigh in favor of transfer. Aside from a few days out of the year where the parties visit the forum

8

for various reasons, including other conferences and business arrangements, the parties are residents of other States and have limited ties to the forum. *See Ascend GEO, LLC*, 2009 WL 10692475, at *3 ("[N]either Plaintiff nor Defendant has substantial contacts with the District of Nevada. In contrast, Defendant resides in the transfer venue. This factor clearly leans in favor of transfer.").

### 6. The parties' contacts relating to the causes of action.

Mr. Hadnagy's claims hinge on Defendants' allegedly "false and defamatory statements" on Def Con's globally accessible website, which resulted in not only Black Hat terminating its business arrangement with Mr. Hadnagy, but also "various large national corporations and law enforcement agencies." Compl. ¶¶ 58, 80, 131. These statements were made several months after the Event and not in Nevada. In other words, Mr. Hadnagy's tort claims arise from Defendants' conduct ***outside of Nevada***.

As explained more fully in Defendants' Motion to Dismiss, *see* ECF No. 13, at 5–8, Def Con's website is accessible anywhere to anyone with an internet connection, meaning these statements were not "expressly aimed" at the forum to constitute contact with the forum. *See Wealthy, Inc. v. Cornelia*, No. 2:21-cv-1173-JCM-EJY, 2023 WL 4803776, at *3 (D. Nev. July 27, 2023). Nothing about Defendants' statements that Mr. Hadnagy had violated the Code of Conduct and would be banned from Def Con (and later, Black Hat) specifically target Nevada residents or encourage them to read the statements. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997).

Moreover, much of Def Con's conduct within the forum is ***unrelated*** to Mr. Hadnagy's claims. To support his claims of contact with the forum, Mr. Hadnagy points to an individual attendee's organization of a firearms event at a shooting range, Def Con's collection of cash admissions at the Event, and the presence of so-

9

called "Goons" as volunteer support. Opp. at 3, 7, 9. However, none of these activities relate whatsoever to Mr. Hadnagy's defamation and business interference claims. The same goes for Def Con's website activities. The fact that the globally accessible website (1) posts information about the Event, (2) provides instructions on how to attend or participate at the Event, (3) provides links to hotel blocks, and (4) provides links to social media posts that mention the Event in Las Vegas, are all unrelated to Mr. Hadnagy's claims.

### 7.  The court's familiarity with the law.

Defendants do not wish to rehash all the points raised in its Motion to Dismiss for lack of personal jurisdiction. *See* ECF No. 13, at 5–8. However, Mr. Hadnagy mischaracterizes this dispute as "tort claims arising from annual trade shows that occur only in Las Vegas, Nevada." Opp. at 15:6–7. Mr. Hadnagy's harassing conduct—or anyone else's for that matter—is ***not*** the basis for the tort claims in this action, nor could it be when he is the party suing. Rather, the tort claims arise from ***Defendants'*** conduct of posting statements about Mr. Hadnagy to its globally accessible website. Mr. Hadnagy does not (and cannot) allege that those statements were made in Nevada.

The only case that Mr. Hadnagy cites in support of this argument is *IDACORP, Inc. v. Am. Fiber Sys., Inc.*, No. 1:11-cv-0065444EL, 2012 WL 4139925 (D. Idaho Sept. 19, 2012), which holds that this factor weighed in favor of *transfer*. 2012 WL 413925, at *4. There, the contract at issue included a clause that "provide[d] that it will be governed by New York law." This case is irrelevant to the Court's analysis because the dispute does not involve a contract.

Because (1) the Court does not have personal jurisdiction over Defendants, (2) the allegedly defamatory statements were not made in Nevada, and (3) the tort claims do not involve complex issues of state law, this factor weighs in favor of transfer to the Western District of Washington.

10

### 8. The costs of litigation.

There is no evidence that Mr. Hadnagy's litigation costs in the District of Nevada are materially different than the Western District of Washington. Mr. Hadnagy's serial litigation against Defendants is expensive, no matter where the dispute is venued. But it would be significantly less expensive for Defendants to defend this case in the Western District of Washington because they would no longer need to pay attorneys' fees for local counsel. Ex. A, Suppl. Decl. Jeff Moss, ¶ 23. Moreover, the costs of travel for Defendants and their employees can be avoided if the action were transferred to the Western District of Washington. By contrast, no matter where the action is litigated—Nevada or Washington—Mr. Hadnagy will incur travel costs.

Mr. Hadnagy's citation of *Strack v. Morris*, No. 3:15-cv-00123-LRH, 2015 WL 4647880 (D. Nev. Aug. 5, 2015) is inapposite. There, the court held that "although the total costs of litigation would likely be higher if Defendants were forced to litigate in Nevada given [the plaintiff] is the only witness of which the Court is aware who resides in Nevada . . . . regardless of venue, at least one party would need to travel across the country to litigate this case." 2015 WL 4647880, at *9. In other words, the plaintiff in *Strack* was "a Nevada citizen," *id.* at *4, and a transfer would merely shift the inconvenience from the defendant to the plaintiff. *See id.* at *9. That is not the case here: Plaintiffs are *not* Nevada citizens, and a transfer would not shift the burden of travel from Defendants to Plaintiffs. The court in *Strack* further held that "travel to an adjacent state is not too burdensome [for witnesses] that the convenience to Defendants outweighs Plaintiff's choice of forum in a venue that has proper jurisdiction over Defendants." *Id.* But, again, unlike here, the *Strack* plaintiff was a Nevada citizen and thus her choice of home form was given "greater deference." *See id.*; *see also Loya*, 583 F.3d at 665. Mr. Hadnagy, as an out-of-state litigant in a removed case, is afforded far less deference for his choice of District of

11

Nevada as a forum, such that the inconvenience to Defendants and witnesses outweighs it.

* * *

Weighing all the factors, the Court should transfer this action to the Western District of Washington.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion to transfer.

DATED this 6th day of November 2023.

**HOLLAND & HART LLP**

*/s/ Robert J. Cassity*
Robert J. Cassity
Erica C. Medley
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

David A. Perez
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099

Matthew J. Mertens
**PERKINS COIE LLP**
1120 N.W. Couch Street 10th Floor
Portland, OR 97209-4128

*Attorneys for Defendants*
*Jeff Moss and DEF CON Communications, Inc.*

12

## **INDEX OF EXHIBITS**

| Exhibit | Description | Page Numbers |
|---|---|---|
| A | Supplemental Declaration of Jeff Moss in Support of Motion to Transfer | 001-005 |

# CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of November, 2023, a true and correct copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER** was served by the following method(s):

☒ <u>Electronic</u>: by submitting electronically for filing and/or service with the United States District Court, District of Nevada's e-filing system and served on counsel electronically in accordance with the E-service list to the following email addresses:

Kristofer Z. Riklis, Esq.
**RIKLIS LAW, PLLC**
871 Coronado Center Dr., Suite 200
Henderson, NV 89052
Email: Kristofer@riklislaw.com

*Attorneys for Plaintiffs*
*Christopher J. Hadnagy*
*and Social-Engineer, LLC*

*/s/ Kristina R. Cole*
An Employee of Holland & Hart LLP

30843718_v1

14