UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Christopher J. Hadnagy, and Social-Engineer, LLC,

    Plaintiffs

v.

Jeff Moss, and Def Con Communications, Inc.,

    Defendants

Case No. 2:23-cv-01345-CDS-BNW

**Order Granting Motion to Transfer and Closing Case**

[ECF No. 15]

    This is a defamation suit. Defendants Jeff Moss and Def Con Communications, Inc. move to transfer this suit to the Western District of Washington. ECF No. 15. Plaintiffs Christopher J. Hadnagy and Social-Engineer, LLC oppose the motion. ECF No. 17. For the following reasons, I grant defendants' motion and transfer this case to the Western District of Washington.[1]

I.     Background

    Defendants Moss and Def Con hold an annual hacker conference in Las Vegas, Nevada. Compl., ECF No. 1-1 at ¶¶ 32–36. This conference is one of the world's largest hacker conventions and it is highly regarded within the industry. *Id.* at ¶ 37. The conference hosts break-out sessions, known as "villages," for smaller groups to attend speeches on particular topics, participate in cyber-security challenges, competitions, demonstrations or games. *Id.* at ¶¶ 40–41. Plaintiffs Hadnagy and Social-Engineer participated in and acted as the host of a village from 2010 through 2021. *Id.* at ¶¶ 44–46. Plaintiffs opted to hold their village virtually in 2020 and 2021, and in January 2022, informed defendants that they would not participate in the 2022 conference. *Id.* at ¶¶ 51, 56. The next month, defendants informed Hadnagy that neither he nor Social Engineer could attend, contribute to, or participate in future conferences. *Id.* at ¶ 57.

---

[1] Because I grant the motion to transfer, I do not address defendants' pending motion to dismiss. ECF No. 13.

Later that month, Moss authored and published the following "Transparency Report" on Def Con's website: "[w]e received multiple [Code of Conduct] violation reports about a DEF CON Village leader, Chris Hadnagy of the SE Village. After conversations with the reporting parties and Chris, we are confident the severity of the transgressions merits a ban from DEF CON." *Id.* at ¶ 58. Because Def Con's website is publicly accessible, a firestorm of social media commentary about Hadnagy ensued speculating as to what he did to violate the code of conduct. *Id.* at ¶ 66. An article titled "DEF CON bans social engineering expert Chris Hadnagy" was published by a renowned and well-known news source in the tech community. *Id.* at ¶¶ 69–72. Plaintiffs allege that the Transparency Report damaged Hadnagy's reputation and caused Social Engineering to lose business. *Id.* at ¶¶ 73–79, 82, 85–86.

Plaintiffs sued defendants in the Eastern District of Pennsylvania, and on January 5, 2023, District Judge Wendy Beetlestone dismissed the case for lack of personal jurisdiction. *See Hadnagy v. Moss*, No. CV 22-3060, 2023 WL 114689 (E.D. Pa. Jan. 5, 2023). On January 13, 2023, defendant Moss published an update to Def Con's website, stating: "[d]uring our investigation we spoke directly with Mr. Hadnagy about claims of his violations of our Code of Conduct. He confirmed his behavior, and agreed to stop. Unfortunately, the behavior did not stop." Compl., ECF No. 1-1 at ¶ 80. And "[o]ur investigation also revealed that DEF CON is not the only security conference to receive complaints about Mr. Hadnagy's behavior. For example, Black Hat received complaints, conducted their own investigation and removed Mr. Hadnagy from their Review Board." *Id.*

On August 9, 2023, plaintiffs filed a complaint in the Eighth Judicial District Court, Clark County, Nevada asserting seven causes of action. *See Christopher J. Hadnagy et al. v. Jeff Moss et al.*, Case No. A-23-875618-C.[2] Defendants removed the action to this court on August 29, 2023. ECF No. 1. Defendants subsequently filed the instant motion to transfer. ECF No. 15.

---

[2] The complaint asserts seven causes of action: (1) Defamation, (2) Business Disparagement, (3) Intentional Interference with Contractual Relations, (4) Intentional Interference with Prospective Economic Advantage, (5) Unjust Enrichment, and (6) Quantum Meruit, (7) Injunctive Relief.

## II. Legal Standard

District courts have the discretion to "adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citation omitted). Motions to transfer are governed by 28 U.S.C. § 1404(a), which states: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under a § 1404(a) motion to transfer, the plaintiff's choice of forum is "entitled to 'paramount consideration' and the moving party must show that a balancing of interests weighs heavily in favor of transfer." *Galli v. Travelhost, Inc.*, 603 F. Supp. 1260, 1262 (D. Nev. 1985). Hence, "§ 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964). The movant must therefore make a strong showing that transfer is appropriate. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2nd 834, 843 (9th Cir. 1986); *Galli*, 603 F. Supp. at 1262.

In determining whether to grant a motion to transfer, the court conducts a two-part analysis. *Malcolm v. Acrylic Tank Mfg., Inc.*, 2019 WL 1923633, at *2 (D. Nev. Apr. 30, 2019) (citing 28 U.S.C. § 1404(a)). The court must first determine if the action could have been brought in the court to which the transfer is sought. *Id.* Then, the court must determine if the transfer is in the convenience of the parties and witnesses, and in the interest of justice. *Id.*

## III. Discussion

For the reasons discussed below, I find that defendants satisfied their burden of proving that this action could have been brought in the Western District of Washington and that transfer is appropriate for the convenience of the parties and witnesses, and in the interest of justice.

### A. This action could have been brought in the Western District of Washington.

28 U.S.C. § 1404(a) permits the "transfer [of] any civil action to any other district or division where it might have been brought[.]" An action can be commenced in a court that has

subject matter jurisdiction, personal jurisdiction, and proper venue. *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960). The parties do not dispute that this case could have been brought in the Western District of Washington. ECF No. 15 at 10; ECF No. 17 at 20. I agree.

The Western District of Washington has subject matter jurisdiction over this action because the parties are citizens from different states and the amount in controversy exceeds $75,000. Compl., ECF No. 1-1 at ¶¶ 14–17, p. 29. The Western District of Washington has personal jurisdiction over this action because both defendants are citizens of Washington; Moss is domiciled in Washington, and Def Con is incorporated and has its principal place of business in Washington. *Id.* at ¶¶ 16–17. Defendants are thus at home in Washington and are subject to general personal jurisdiction there. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). And the Western District of Washington is a proper venue because both defendants reside in counties that fall within the court's jurisdiction. Compl., ECF No. 1-1 at ¶¶ 16–17; ECF No. 15 at 10–11. Thus, plaintiffs could have originally filed this action in the Western District of Washington.

### B. Interest of justice

To determine whether transfer supports the interest of justice, courts must weigh multiple factors, including: (1) the location where the relevant agreements were negotiated and executed, (2) the plaintiffs' choice of forum, (3) the parties' contacts with the forum, (4) the contacts relating to the plaintiffs' cause of action in the chosen forum, (5) the state most familiar with the governing law, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Jones*, 211 F.3d at 498–99.

#### i. Factor one: location of the agreement's negotiation and execution.

Because this dispute does not implicate any agreements, the first factor is neutral. *Ipatt Grp., Inc., v. Scotts Miracle-Gro Co.*, 2010 WL 11579689, at *3 (D. Nev. Sept. 9, 2010).

*ii. Factor two: plaintiffs' choice of forum.*

Although courts in this circuit typically give the plaintiff's choice of forum deference, a plaintiff's choice of forum is given less deference when the district court is not the plaintiff's home forum. *Ascend GEO, LLC v. OYO Geospace Corp.*, 2009 WL 10692475, at *3 (D. Nev. Aug. 28, 2009) ("[G]iven that Plaintiff is a resident of Colorado rather than Nevada, [p]laintiff's choice of forum will be given less deference."). Here, Nevada is neither Hadnagy nor Social Engineer's home forum, and "[w]here a plaintiff does not reside in the forum, the Court may afford his choice considerably less weight." *See Young v. Wells Fargo & Co.*, 2008 U.S. Dist. LEXIS 103955, at *10 (N.D. Cal. Dec. 17, 2008). Additionally, a plaintiff's choice of forum is given less weight when the case has been removed from the state court, as the case was here. *See Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 947 (S.D. Ohio 2002) ("A plaintiff's choice of forum, however, is entitled to somewhat less weight when the case is removed to federal court because the plaintiff is no longer in his or her chosen forum, which was state court."). Because Nevada is neither Hadnagy nor Social Engineer's home forum, and because this action was removed, plaintiffs' choice of forum is given less deference here and is neutral at best.

*iii. Factor three: parties' contacts with the forum.*

Moss does not reside or own property in Nevada and maintains a permanent residence in Washington. Decl. Jeff Moss, Defs.' Ex. A, ECF No. 15-1 at ¶¶ 2–3. Similarly, Def Con does not maintain offices in Nevada and its principal place of business is Washington. *Id.* at ¶¶ 5–8.[3] Def Con's website is globally accessible and does not use any form of targeted communication or advertisement to Nevada residents. *Id.* at ¶¶ 10–13.[4] Def Con has nine permanent employees,

---

[3] For avoidance of confusion, the court notes that it is citing putative paragraph numbers five through eight but because the declaration restarts its paragraph numbering after paragraph four, the cited paragraphs are technically numbers one through four in the document.

[4] For avoidance of confusion, the court notes that it is citing putative paragraph numbers 10 through 13 but because the declaration restarts its paragraph numbering after paragraph four, the cited paragraphs are technically numbers six through nine in the document.

seven of whom live in Washington, and none live in Nevada. *Id.* at ¶ 7.[5] Def Con has approximately 100 volunteers for the annual conference in Las Vegas. Moss Suppl. Decl., Defs.' Ex. A, ECF No. 18-1 at ¶ 8. These volunteers are not Def Con employees and receive no payment for volunteering at the event. *Id.* at 10. ECF No. 17 at 17; List of Some Active Goons, Pls.' Ex. 10 to Riklis Decl., ECF No. 17-11. Moss travels to Nevada for the conference, and travels to the state one weekend a few months prior to the conference to coordinate event logistics. ECF No. 18 at 12; Moss Suppl. Decl., Defs.' Ex. A, ECF No. 18-1 at ¶ 4. Although Hadnagy claims to have regularly provided cybersecurity services to business entities in the state, he did not provide the court with current connections to Nevada, other than leasing a storage unit. *See* ECF No. 17 at 12. Social Engineering appears to have no current connections to Nevada beyond the storage unit and has no employees in the state. ECF No. 17 at 15. Thus, this factor weighs in favors transfer. *See Ascend GEO, LLC*, 2009 WL 10692475, at *3 ("As stated previously, neither [p]laintiff nor [d]efendant has substantial contacts with the District of Nevada. In contrast, [d]efendant resides in the transfer venue. This factor clearly leans in favor of transfer.").

        *iv.  Factor four: contacts relating to the plaintiffs' cause of action in the forum.*

Plaintiffs' claims are based on alleged "false and defamatory statements" published by Moss on Def Con's website. *See* Compl., ECF 1-1. Although plaintiffs do not allege that these statements were made in Nevada, they do claim that they were directed at Nevada. ECF No. 17 at 12–13. I agree that there is some connection with the forum; defendants' statement banned plaintiffs from Def Con, including the Nevada conference. Compl., ECF 1-1 at ¶ 58. And plaintiffs also claim that the statements interfered with their business relations, including another cybersecurity convention held in Nevada. *Id.* at ¶¶ 119, 124, 135–139. But without more directly relating to the alleged defamatory statements or business interference claims, this level of contact only weighs slightly against transfer.

---

[5] For avoidance of confusion, the court notes that it is citing putative paragraph number seven but because the declaration restarts its paragraph numbering after paragraph four, the cited paragraph is technically number three in the document.

     v. *Factor five: familiarity with governing law.*

  "To determine which state is most familiar with the law governing this case, the Court must first determine what state's law governs." *Kawamura v. Boyd Gaming Corp.*, 2012 U.S. Dist. LEXIS 172512, at *32 (D. Haw. Dec. 5, 2012). A federal court sitting in diversity applies the law of the forum state to determine which state's substantive law applies. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). Thus, because the case was filed in the Eighth Judicial District Court, Clark County, Nevada, the court looks to Nevada's conflict laws to determine which state's law to apply. Nevada uses the Restatement (Second) of Conflict of Law's most significant relationship test in tort actions, unless a more specific section of the Restatement applies to a particular court. *Gen. Motors Corp. v. Eighth Jud. Dist. Ct. of State of Nev. ex rel. Cnty of Clark*, 122 Nev. 466, 134 P.3d 111, 116 (2006). Washington courts have also adopted the Second Restatement's most significant relationship test for tort claims. *See Rice v. Dow Chem. Co.*, 875 P.2d 1213, 1217 (1994). Under the most significant relationship test, the court applies the law of the state "which, with respect to that issue, has the most significant relationship to the occurrence and the parties." Restatement § 145(1).

  While federal courts may "routinely apply the law of a [s]tate other than the [s]tate in which they sit" (*Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 67 (2013), this factor weighs slightly against transfer because it is plausible that this court has the most significant relationship to the occurrence and the parties. Although it has not been alleged that the alleged defamatory statements were made in Nevada, as discussed in the background section above, the parties' interactions are rooted in Def Con's conference held in Las Vegas, Nevada. Thus, of the two states, and based on the allegations in the complaint, Nevada has the most significant relationship. This factor only weighs slightly against transfer because "[t]he forums's familiarity with the governing law is typically to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of

other states." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 398 (S.D.N.Y. 2014) (internal citations and quotations omitted).

             vi.   *Factor six: differences in costs of litigation in the two forums.*[6]

Plaintiffs first argue that this action should remain in Nevada because they "would encounter considerably more economic hardship if forced to litigate these claims in Washington as opposed to Nevada" as neither plaintiff has business operations or dealings in Washington and have not visited the state "more than one time in the past 10 years." ECF No. 17 at 26. Plaintiffs further allege that because they will have to retain local counsel in Washington, they would encounter additional financial hardship and transfer would "merely shift the inconvenience from one party to another." *Id.* at 26–27. However, since neither plaintiff is a resident of Nevada or Washington, litigation expenses are not likely to be significantly different in either state; plaintiffs must still retain local counsel and incur travel costs. *See Cavern City Tours Ltd v. Hard Rock Café Int'l (USA), Inc.*, 2012 WL 12898616, at *2 (D. Nev. Sept. 12, 2012) (finding that this factor weighs in favor of transferring when a nonresident plaintiff will incur similar consist in either venue). In contrast, defendants will incur significantly more litigation expenses if the case remains in Nevada; but if this action is transferred to Washington, defendants will incur significantly less litigation expenses as they would no longer have to pay local counsel or travel costs. Moss Suppl. Decl., Defs.' Ex. A, ECF No. 18-1 at ¶ 23.

While plaintiffs claim that defendants have a superior financial position, they do not provide evidence. ECF No. 17 at 28. Nevertheless, as plaintiffs' note, the parties' relative financial ability is not entitled to great weight. *Id.* (quoting *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 820 (N.D. Cal. 2008)).

Thus, because transferring does not impose an additional burden on plaintiffs, and aids defendants, the cost of litigation weighs in favor of transfer. *See Ricoh Co. v. Honeywell, Inc.*, 817 F.

---

[6] Plaintiffs discuss this factor in regard to the non-party witnesses that defendants previously disclosed in the dismissed Pennsylvania action. ECF No. 17 at 28. However, defendants have not indicated that they intend to call those witnesses in this action, as discussed below in section C, ii.

Supp. 473 (D.N.J. 1993) ("Where venue transfer would aid the movant and not disadvantage the opponent, transfer is appropriate.")

      vii. *Factor seven: availability of compulsory process to compel attendance of unwilling non-party witnesses.*

Neither party has identified any potential unwilling witnesses that may need to be compelled to testify in either forum.[7] Thus, this factor is neutral. *See Holck v. Bank of New York Mellon Corp.*, 769 F. Supp. 2d 1240, 1256 (D. Haw. 2011) ("[T]his factor is neutral because neither [p]laintiff nor [d]efendants have identified any unwilling nonparty witnesses."); *Lopatin v. LTF Club Operations Co. Inc.*, 2016 WL 407319, *3 (D. Ariz. Feb. 3, 2016) (same).

      viii. *Factor eight: the ease of access to sources of proof.*

"In assessing the ease of access to proof, courts look at the location of records and documents." *Defazio v. Hollister Emple. Share Ownership Tr.*, 406 F. Supp. 2d 1085, 1091 (E.D. Cal. 2005) (citation omitted). "The moving party must show the location and importance of the records." *Id.* (internal quotation and citation omitted). "[I]n the age of electronically stored information, the ease of access to evidence is neutral [when] much of the evidence…will be electronic documents, which are relatively easy to obtain in any district." *Id.* In a defamation case, relevant documentary evidence includes evidence that was used in the preparation of the alleged defamatory statements and pertinent documents maintained by non-parties. *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1357 (N.D. Ga. 2004).

Plaintiffs argue that "it is highly likely that witnesses and documents will be located in Nevada, or will return to Nevada for the [conference]" and the parties will have to seek evidence regarding the veracity of the defamatory statements which address Hadnagy's behavior in Las Vegas, Nevada. ECF No. 17 at 30. Plaintiffs claim that in order to obtain such evidence, discovery will need to be conducted in Nevada because the behavior occurred in Nevada, and

---

[7] Neither party has named potential witnesses at this time. However, if a future named non-party witness is unwilling to testify at trial in Nevada or Washington, they will still be able to testify by deposition. *See Stack v. Morris*, 2015 WL 4647880, at *10 (D. Nev. Aug. 5, 2015).

they will seek documentation from hotels that hosted the event or its attendees. ECF No. 17 at 30. Defendants counter that any documentation related to the conference and Hadnagy's participation, including Def Con's communications with third parties regarding Hadnagy's conduct, are located in Washington. ECF No. 16 at 6. Plaintiffs argue that initial disclosures from the prior dismissed Pennsylvania action revealed that "some" of these documents are "on the cloud" and could are easily movable. ECF No. 17 at 31. While the court agrees that virtual documents may be easily obtained in both districts electronically, it is not clear at this time if all relevant documents are electronic, and Moss stated in his declaration that Def Con's physical documents are in Washington. Moss Decl., Defs.' Ex. A, ECF No. 15-1 at ¶ 8.[8] However, "[w]ith technological advances in document storage and retrieval, transporting documents generally does not create a burden." *Van Slyke v. Cap. One Bank*, 503 F. Supp. 2d 1353, 1362 (N.D. Cal. 2007).

Defendants also argue that evidence relating to plaintiffs' business interference claims will be located at Social Engineer's principal place of business in Florida or at other entities' principal place of business. ECF No. 18 at 10. Plaintiffs did not address the ease access to sources of proof regarding their business interference claims.

Because the ease of access to sources of proof is neutral when much of the evidence will be electronic documents, this factor is neutral. *See Defazio*, 406 F. Supp. 2d at 1091.

### C. Convenience of the parties and witnesses favors transfer.

#### i. Convenience of the parties.

Defendants claim that venue in Nevada inconveniences the parties, witnesses, and access of proof because no party in this action is located in Nevada and most, if not all, witnesses are located outside of the state. ECF No. 15 at 6–7. Plaintiffs claim that they are less physically and financially equipped to handle a transfer of venue than defendants and that any transfer will shift the burden to them. ECF No. 17 at 25. However, all parties are out-of-state litigants in

---

[8] For avoidance of confusion, the court notes that it is citing putative paragraph number eight but because the declaration restarts its paragraph numbering after paragraph four, the cited paragraph is technically number four in the document.

Nevada and all are subject to the same inconvenience of litigating outside of their home forum if the action resumes in this district. Plaintiffs did not present any evidence that travel to Washington would be any more time consuming or expensive than travel to Nevada—plaintiffs "generally reside in Pennsylvania and Florida" and would have to travel across the country to either Nevada or Washington. ECF No. 17 at 25. But if a transfer of venue is granted, defendants' travel time and expense would be greatly reduced as they are residents of Washington. Additionally, considering that neither party has substantial presence in the District of Nevada, other than a four-day conference for defendants and a storage facility for plaintiffs, the convenience falls in favor of transfer to a district where one of the parties reside. *See Am. Heavy Moving & Rigging, Inc. v. Sheedy Drayage Co.*, 2009 WL 10693611, at *2 (D. Nev. May 4, 2009) ("considering that neither party has a substantial presence in the District of Nevada, the convenience again falls in favor of transfer to a district where one of the parties resides."). Thus, the court is inclined to grant the motion to transfer for the convenience of the parties.

    ii. *Convenience of the witnesses.*

  "The convenience of witnesses is often the most important factor in determining whether a transfer under section 1404 is appropriate." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009). To determine whether the convenience of the witnesses favors transfer, the court must consider both the location and number of witnesses each side has and the relative importance of those witnesses. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335–36 (9th Cir. 1984). "Courts have repeatedly held that the defendant must name the witnesses it wishes to call, describe the anticipated areas of their testimony, explain their relevance, and provide reasons why the present forum would present hardship to show that litigation in the forum state is inconvenient under this factor." *Proximo Spirits, Inc. v. Green Lake Brewing Co., LLC*, 2022 WL 17224545, at *10 (C.D. Cal. Sept. 9, 2022) (collecting cases).

Defendants did not name any witnesses they wish to call or describe anticipated testimony. Rather, defendants merely state: "[w]hile it is still early in the case to identify witnesses, Defendants anticipate that most witnesses will be located in Washington—where Defendants reside—or elsewhere in the country other than Nevada." ECF No. 15 at 13. While plaintiffs state that "it is highly likely" that witnesses will be located in Nevada, they similarly did not name any witnesses they wish to call or describe anticipated testimony. *See* ECF No. 17 at 30. Plaintiffs did however discuss the possibility and implication of defendants calling the same witnesses as they previously disclosed in the dismissed Pennsylvania action (ECF No. 17 at 14–15) and defendants responded in their reply (ECF No. 18 at 9). But defendants did not state that they anticipate calling these witnesses, and speculation is insufficient at this stage. *See Gates Learjet Corp.*, 743 F.2d at 1335–36.

While there may be potential witnesses in Nevada, neither party identifies with any specificity a critical or necessary witness whose availability could hinge on the choice of venue. Accordingly, "[t]hese components appear to offset, and the court finds this factor is neutral." *Hawkins v. Gerber Prod. Co.*, 924 F. Supp. 2d 1208, 1215–16 (S.D. Cal. 2013). Thus, based on the information before the court, convenience of the parties and witnesses favors transfer.

In sum, two of the *Jones* factors weigh in favor of transfer, three remain neutral, and only two weigh slightly against transfer. Although the *Jones* factors do not heavily favor transfer, because this action could have been brought in Western District of Washington, and the convenience of the witnesses and the parties favors transfer, the court finds that in balancing all the factors, defendants met their burden to show transfer to the Western District of Washington is appropriate.

IV.     **Conclusion**

IT IS HEREBY ORDERED that the defendants' motion to transfer **[ECF No. 15] is GRANTED**.

IT IS FURTHER ORDERED that the Clerk of Court is kindly instructed to **TRANSFER** this case to the United States District Court for the Western District of Washington and **close the case in this district.**

DATED: December 12, 2023

_____
Cristina D. Silva
United States District Judge